UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KRISTIN BRADY,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES CAPITOL POLICE,<br><br>                    Defendant. | Civil Action No. 15-cv-1299 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, Officer Kristin Brady, brings this action against her employer, United States Capitol Police ("USCP" or "defendant"), pursuant to Section 207(a) of the Congressional Accountability Act ("CAA"), 2 U.S.C. § 1317(a), asserting a single claim for unlawful retaliation. Compl. ¶¶ 35–36. By her own admission, the plaintiff used foul language to relay sexually-graphic gossip to a co-worker, prompting the defendant's Office of Professional Responsibility ("OPR") to investigate and ultimately discipline the plaintiff. *Id.* ¶¶ 24–27, 32–33. Notwithstanding the plaintiff's own admitted conduct, she now claims that by issuing this discipline, the defendant retaliated against her in violation of the CAA. *Id.* ¶¶ 11, 36. The plaintiff's claim fails, however, because she makes no allegation that she ever opposed unlawful discrimination based on a protected class, nor does she allege that she participated in any formal proceedings protected by the CAA. *See generally* Compl. Pending before the Court is the defendant's motion to dismiss the complaint for failure to state a claim, under Federal Rule of Civil Procedure (12)(b)(6). Def.'s Mot. Dismiss ("Def.'s Mot."), ECF No. 4. For the reasons set forth below, this motion is granted.

1

I.     BACKGROUND

On July 1, 2014, a USCP officer ("complainant") filed a written complaint with the USCP concerning a conversation among other USCP officers that the plaintiff had allegedly overheard and relayed to the complainant. *Id.* ¶¶ 9–10. Specifically, the complainant reported: "Sergeant Jodi Breiterman was overhead by officers talking in the Capitol Division office. She intimated that I received my assignment due to my relationship with Deputy Chief Roullier and said something to the effect of 'who do I have to sleep with to get a cushy assignment.'" *Id.* ¶ 10. The complainant concluded, "[i]f true, then supervisors of the Department have made statements that perpetuated rumors and have contributed to a hostile work environment. The Department has not taken any steps to challenge the rumor that my assignment was the result of a quid pro quo relationship." *Id.*

Pursuant to this written complaint, the USCP's OPR initiated an investigation. *Id.* ¶ 11. In the course of the investigation, the complainant identified the plaintiff "as the individual who notified her about Sergeant Breiterman's comments" and provided OPR with a copy of a text message that the plaintiff had sent the complainant describing the comments. *Id.* ¶¶ 12–13.

Approximately, two weeks later, on July 16, 2014, OPR interviewed the plaintiff. *Id.* ¶ 14. The OPR Investigator informed the plaintiff "that she was being interviewed as a 'witness,'" and the plaintiff "received paperwork confirming [the same]." *Id.* ¶ 15. The plaintiff reported to the OPR Investigator that in late May 2014, she "observed Sergeant Jodi Breiterman . . . . say the name 'Joe,' and 'two months,'" as well as make other comments about the complainant. *Id.* ¶¶ 17–19. She further "heard Sergeant Breiterman say 'is that what I have to do to get ahead in this place?'" *Id.* ¶ 22. The plaintiff was aware that the complainant had previously been married to another USCP officer, Joe, "and that rumors recently surfaced that the complaining officer was

in a relationship with a superior officer." *Id.* ¶ 20.  Based on this conversation, the plaintiff "believed that Sergeant Breiterman was spreading rumors about the complaining officer and creating a hostile work environment." *Id.* ¶ 23.

The plaintiff then sent a text message to the complainant "to report Sergeant Breiterman's harassing comments." *Id.* ¶¶ 24, 28.  The message stated:

> YOU DID NOT HEAR THIS FROM ME! Breiterman is pissed off that she didn't get her transfer to Intel.  cobbin got it over her so now she is on a rampage and trying to take down anyone in her path which includes you.  I just walked in on her bashing you in the middle of the capitol division office for everyone to hear. basically saying who's dick do I need to suck to get ahead in this place and going through the whole story like she knew it firsthand from your s[e]paration today.

*Id.* ¶ 25.  The plaintiff explained to the OPR Investigator that the statements in this text message were not direct quotes, but rather "were paraphrasing" and that "she could not recall exactly what Sergeant Breiterman said, although she was fairly certain Sergeant Breiterman did not use profanity." *Id.* ¶¶ 26–27.  Shortly after the interview with OPR, the plaintiff "learned that her status in the investigation had been changed to 'Respondent'" rather than witness.  *Id.* ¶ 30.

 "On or before December 31, 2014, [USCP] learned that the [complainant] filed a complaint with the Office of Compliance regarding her treatment by [USCP]." *Id.* ¶ 31.  Several days later, on January 5, 2015, in accordance with OPR's instructions, the plaintiff was charged with violating a USCP Rule of Conduct against making "Improper Remarks," by sending an "exaggerated text message to [the complainant] . . . . contain[ing] information that was very specific and sexually graphic.  Brady's text message was malicious, untruthful, and frivolous against or about other members of the Department in the workplace, and contributed to the filing of the complaint [by

3

the complainant]." *Id.* ¶ 33 (citing "January 14, 2015 CP-534 Forfeiting Eight Hours of Time/Pay").[1]

The plaintiff apparently then filed her own complaint of retaliation, "completed counseling and mediation required by 2 U.S.C. §§ 1402 and 1403 and received notice that mediation ended on May 15, 2015." *Id.* ¶ 4. As stated in the End of Mediation Notice, the plaintiff's mediation request "was based upon allegations that the employing office violated sections 201 and 207 of the [CAA]." Compl. Ex. A ("End of Mediation Notice") at 1, ECF No. 7. On August 12, 2015, the plaintiff filed the complaint initiating this lawsuit. *See generally* Compl.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 134 S. Ct. 2056, 2067 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action" to provide

---

[1] The plaintiff seeks relief in the form of a declaratory judgment that the defendant violated her rights and "backpay and related benefits caused by the [] Employer's retaliatory actions." Compl. at 7. The plaintiff does not otherwise disclose the amount of such damages at issue, but based upon the title of the disciplinary charge brought against the plaintiff, due to her infraction of "Improper Remarks," she was required to "Forfeit[] Eight Hours of Time/Pay." *Id.* ¶ 33.

"'grounds'" of "'entitle[ment] to relief,'" *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), and "nudge[ ] [the] claims across the line from conceivable to plausible," *id.* at 570.  Thus, "a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to plead a claim on which relief can be granted, the court must consider the complaint in its entirety, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construe all reasonable inferences in favor of the plaintiff.  *Twombly*, 550 U.S. at 555; *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) ("We assume the truth of all well-pleaded factual allegations and construe reasonable inferences from those allegations in a plaintiff's favor." (citing *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014))).  The Court "need not, however, 'accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint.'" *Nurriddin*, 818 F.3d at 756 (alteration in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

**III.   DISCUSSION**

The plaintiff brings this lawsuit under the CAA, 2 U.S.C. §§ 1301 *et seq.*, which, in relevant part, applies Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.*, and ten other remedial federal statutes, "to the legislative branch of the Federal Government," 2 U.S.C. § 1302(a).  Similar to the statutory framework set up in Title VII, the CAA requires plaintiffs to first exhaust their administrative remedies.  2 U.S.C. § 1401; *see also Blackmon-Malloy v. U.S.*

*Capitol Police Bd.*, 575 F.3d 699, 705 (D.C. Cir. 2009) (finding CAA's counseling and mediation exhaustion requirements to be jurisdictional).[2]

Fully exhausted claims of discrimination under the CAA are analyzed under the three-part framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Howard v. Office of the Chief Admin. Officer of the United States House of Representatives*, 720 F.3d 939, 947–48 (D.C. Cir. 2013) (applying *McDonnell Douglas* framework to employment discrimination suit brought under CAA); *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 492–94 (D.C. Cir. 2008) (same). Under this framework, the plaintiff bears the initial burden of making out a *prima facie* case of discrimination, by showing that: "(1) [s]he engaged in protected activity; (2) [s]he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action." *Hamilton v. Geithner,* 666 F.3d 1344, 1357 (D.C. Cir. 2012) (internal quotation marks omitted); *see also Nurriddin*, 818 F.3d at 758 n.6 ("A prima facie case of retaliation requires that a plaintiff demonstrate she: 1) engaged in a statutorily protected activity; 2) suffered a materially adverse action by her employer; and that 3) a causal connection existed between the two.").

If the *prima facie* case is made, the defendant employer must establish that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Youssef v. FBI*, 687

---

[2] To administratively exhaust a CAA claim, the plaintiff must, first, make a "request [for] counseling by the Office [of Compliance]" within 180 days of the date of the alleged violation. 2 U.S.C. § 1402(a). Second, within fifteen days after the plaintiff's receipt of "notice of the end of the counseling period," *id.* § 1403(a), which lasts no longer than thirty days, *id.* § 1402(b), the employee shall file a request for mediation, *id.* § 1403(a). Third, "[n]ot later than 90 days, but not sooner than 30 days, after the end of the period of mediation," the plaintiff may either file a complaint with the OOC or file a civil action in "the United States district court for the district in which the employee is employed or for the District of Columbia." *Id.* § 1404. A civil action may only be commenced, however, by a plaintiff who "seek[s] redress for a violation for which the employee has completed counseling and mediation." *Id.* § 1408(a). Here, the plaintiff alleges that she completed the "counseling and mediation required" in the proper timeline, *see* Compl. ¶ 4; Compl. Ex. A, and the defendant does not dispute that she exhausted her administrative remedies as to the retaliation claim, as required by the CAA, *see generally* Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem."), ECF No. 4-1.

F.3d 397, 402 (D.C. Cir. 2012). When "'the employer asserts a legitimate, non-discriminatory reason' for an adverse employment action, the *prima facie* case 'drops out of the picture,' and a plaintiff must simply prove 'that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin.'" *Ponce v. Billington*, 679 F.3d 840, 844 (D.C. Cir. 2012) (quoting *Brady*, 520 F.3d at 493–94).

Relevant to the particular allegations in this complaint, the CAA prohibits discrimination based on sex, 2 U.S.C. § 1311(a)(1), and includes an anti-retaliation provision, which makes it "unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has *opposed* any practice made unlawful by this chapter, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or *participated* in any manner in a hearing or other proceeding under this chapter," 2 U.S.C. § 1317(a) (emphasis supplied). The two categories of conduct triggering the anti-retaliation provision are referred to as the "opposition" and "participation" clauses. *See Crawford v. Metro. Gov't of Nashville & Davidson Cty.*, 555 U.S. 271, 274 (2009); *Moran v. United States Capitol Police Bd.*, 887 F. Supp. 2d 23, 30 (D.D.C. 2012). When evaluating discrimination or retaliation claims under the CAA, Title VII standards apply. *See Brady*, 520 F.3d at 493; *Blackmon-Malloy*, 575 F.3d at 701.

Here, the defendant contends that the plaintiff's complaint must be dismissed for the fundamental reason that the plaintiff "did not engage in protected activity made unlawful under the [CAA], and, thus, cannot establish a claim of retaliation under the CAA." Def.'s Mem. Supp. Mot. Dismiss ("Def.'s Mem.") at 1, ECF No. 4-1. The Court agrees that the plaintiff has not alleged that she "oppose[d]" any practice made unlawful under the CAA, *id.* at 6–8, nor did

she in any other way allege that she "participated in protected activity . . . under the CAA," Def.'s Reply Supp. Mot. Dismiss ("Def.'s Reply") at 5–6, ECF No. 6. Accordingly, the plaintiff has failed sufficiently to allege even the first prong of a *prima facie* case, and as a result her complaint has failed to state a retaliation claim. *See Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of the Library of Cong., Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013) (affirming dismissal where "plaintiffs have failed to allege the first element of a Title VII retaliation claim: that an employee engaged in statutorily protected activity").[3] The plaintiff's failure to plead protected oppositional or participatory activity is discussed in more detail below.

### A. OPPOSITION CLAUSE

The defendant correctly points out that neither the plaintiff's gossip to another employee, nor her role in the related OPR investigation amounts to protected oppositional activity. This is because glaringly absent from the plaintiff's complaint is any allegation that she communicated discriminatory conduct *based on a protected class* to her employer. As the D.C. Circuit observed, "Not every complaint garners its author protection under Title VII." *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006) (citing *Pope v. ESA Servs., Inc.*, 406 F.3d

---

[3] Even assuming, *arguendo*, that the plaintiff sufficiently pleads oppositional or participatory protected activity, her complaint must still be dismissed for failure to plead a causal link between that activity and the discipline she received. Where, as here, the plaintiff has included in her complaint allegations regarding the defendant's explanation for the plaintiff's discipline, Compl. ¶¶ 25, 33, with the conclusory allegation that such explanation is pretext, *id.* ¶ 37, she must also allege facts supporting that conclusion, *see Ey v. Office of the Chief Admin. Officer*, 967 F. Supp. 2d 337, 342 (D.D.C. 2013). Thus, the key question before the Court is whether, to survive the defendant's motion to dismiss, the plaintiff has sufficiently pled facts to sustain her claim that the defendant's explanation for her discipline was pretextual and that her discipline was retaliatory for her alleged protected conduct. *See, e.g.*, *Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 41 (D.D.C. 2012) (dismissing complaint where "the plaintiff alleges no fact from which a reasonable person could infer that his status as an African-American or his alleged disability caused him to suffer an adverse employment action"). The plaintiff has failed to do so since she has conceded that she sent a text message to a co-worker with inappropriate content and that this conduct formed the grounds for her discipline. *See* Compl. ¶¶ 24–26. The plaintiff's reliance on conclusory boilerplate language that her discipline was instead somehow retaliatory is wholly insufficient. *See id.* ¶¶ 36–37. For this independent reason, the plaintiff's claim fails. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *see generally Moran*, 887 F. Supp. 2d at 38–39 (granting defendant's motion for summary judgment where plaintiff failed to "disprove the employer's proffered explanation for its employment action").

1001, 1010 (8th Cir. 2005) and *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727–28 (7th Cir. 2003)). "To oppose a discriminatory employment practice, conduct that is statutorily protected, plaintiff is required to *communicate* to [her] employer that [she] believes the employer's conduct is, in fact, discriminatory." *Moore v. Office of the Architect of the Capitol*, 828 F. Supp. 2d 254, 257 (D.D.C. 2011) (citing *Crawford*, 555 U.S. at 274) (emphasis in original). "'While no "magic words" are required, the complaint must in some way allege unlawful discrimination,'—that is, discrimination on the basis of a protected characteristic." *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 89 (D.D.C. 2010) (quoting *Broderick*, 437 F.3d at 1232); *see also Budik v. Howard Univ. Hosp.*, 986 F. Supp. 2d 1, 8–9 (D.D.C. 2013) ("[A] plaintiff's complaint to her employer, the EEOC, or another appropriate person or entity must allege discrimination on the basis of membership in a protected class in order for that complaint to in turn constitute the type of statutorily protected activity contemplated by Title VII's retaliation provision." (emphases omitted)).

Even viewing as true all of the allegations in the complaint, the plaintiff fails to assert facts suggesting that she was opposing discrimination based on a protected class or, in particular, that she was opposing a female Sergeant's sexual harassment of another woman, the complainant. Instead, the plaintiff's text message to the complainant merely relates that the Sergeant herself was frustrated with her career path within the USCP and was targeting "anyone in her path." Compl. ¶ 25. Thus, the Sergeant's overheard words did not appear to be directed at any particular protected group.[4]

Likewise, the plaintiff alleges that she told OPR during her interview "that she was simply trying to report Sergeant Breiterman's harassing comments." *Id.* ¶ 28. Reporting general

---

[4] The defendant also argues that "there are simply no facts in the Complaint that Plaintiff reported rumors to her employer." Def.'s Mem. at 6; *see also* Def.'s Reply at 2 ("[S]ending gossip to a friend is not activity protected

"harass[ment]," however, is not the same as alleging that she reported sexual harassment, or harassment based on any other protected characteristic. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* . . . because of . . . sex.'" (emphasis in original)). In the course of the plaintiff's communications both to the complainant and to OPR regarding Sergeant Breiterman's overheard comments, the plaintiff did not once suggest that what she overheard Sergeant Breiterman say had any link to the complainant's membership in a protected class. Thus, the plaintiff's allegations regarding her text message to the complainant and her subsequent interview with OPR are wholly insufficient to allege protected oppositional activity under the CAA. *See Slate v. Public Def. Serv.*, 31 F. Supp. 3d 277, 308–09 (D.D.C. 2014) (finding complaints that "made no mention of discrimination" did not amount to protected activity); *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 247 (D.D.C. 2011) (granting summary judgment on retaliation claim where there was "no evidence that [the plaintiff's] complaint to [the defendant] alleged unlawful discrimination based on his membership in a protected class"); *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 92–93 (D.D.C. 2006) (granting summary judgment where sole protected activity plaintiff identified was her

---

by the CAA."). The Court need not address whether the plaintiff's conduct amounts to reporting discriminatory conduct to her employer because the complaint is dismissed on other grounds. In any event, other courts have found that reporting discriminatory conduct to a colleague, but not a supervisor, is sufficient to amount to oppositional conduct. *See, e.g., Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 647 (6th Cir. 2015) (finding "protected activity includes complaints to co-workers, reporters, and managers"); *Schumacher v. Fairfield Resorts, Inc.*, 2007 U.S. Dist. LEXIS 100247, at *76 (D.R.I. June 8, 2007) ("[C]omplaints made to co-workers about discrimination based on sex are protected activity under Title VII."). Further, the means of communication used to report discrimination are immaterial as "[i]t is well settled that Title VII protects informal, as well as formal, complaints of discrimination." *Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007).

10

complaint of harassment against her supervisor that did not refer to harassment or discrimination based on any protected category under Section 1981).

To this point, "[a]n employee seeking the protection of the opposition clause [must] demonstrate a good faith, reasonable belief that the challenged practice violates Title VII." *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005) (alteration in original) (citation omitted). The plaintiff's allegation of a single-isolated incident of gossip, even if sexual in nature, is simply insufficient to state that the plaintiff had a reasonable belief that she was challenging conduct that violated the CAA.  *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001) (finding no reasonable belief that a brief discussion of and laughter over a sexually-explicit statement in a job applicant's psychological report violated Title VII); *see also Leavitt*, 407 F.3d at 408 (finding plaintiff could not have reasonably believed that co-workers telling her to "'go back to Trinidad'" or to "'go back to where [she] came from,' . . . . shout[ing] at her, [telling] her that she should never have been hired, and [telling] her to 'shut up,'" constituted a violation of Title VII).  For this reason, the plaintiff's complaint fails to allege sufficient facts regarding oppositional conduct to withstand a motion to dismiss.

### B.    PARTICIPATION CLAUSE

Further, plaintiff has not pled that she "initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this chapter," 2 U.S.C. § 1317(a), for the straightforward reason that an OPR investigation, as alleged here, is not a proceeding under the CAA.  In the context of a Title VII claim, the D.C. Circuit has held that "[t]he participation clause speaks in clear, absolute terms, and has accordingly been interpreted as shielding recourse *to the EEOC*." *Parker v. Baltimore & O. R. Co.*, 652 F.2d 1012, 1019 (D.C. Cir. 1981) (emphasis added).  As such, district courts in this jurisdiction and other circuits

have found the participation clause to protect only activity under EEOC proceedings. *See Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 50 (2d Cir. 2012) (finding that under the plain language of the participation clause, "internal investigations not associated with a formal EEOC charge" do not qualify as protected activity); *Weizel v. Bernstein*, 436 F. Supp. 2d 110, 119 (D.D.C. 2006) (proceedings not under Title VII are not protected under the participation clause). Where, as here, the CAA applies, not Title VII, "protection under the participation clause only extends to complaints made to the Office of Compliance ["OOC"], which is the body that receives and responds to employment claims under the CAA." *Moran*, 887 F. Supp. 2d at 34 n.9 (finding plaintiff not protected under participation clause where complaint filed with OPR, not with the OOC). The plaintiff has alleged only that she participated in an investigation with OPR, not OOC. Compl. ¶ 13. Accordingly, the plaintiff's allegations regarding her participation in the OPR investigation are not sufficient to assert protected participation activity and, thus, also fail to support a retaliation claim under the CAA.

## IV. CONCLUSION

For the reasons summarized above, the defendant's motion to dismiss is granted and the plaintiff's complaint is dismissed in its entirety.[5]

---

[5] The plaintiff's request that "this Court grant plaintiff leave to amend, in order to cure any alleged deficiencies in the pleadings," Pl.'s Mem. Opp'n Def.'s Mot. Dismiss at 6, ECF No. 5, is denied. While amendment of a complaint to overcome deficiencies must be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the plaintiff fails to comply with the requirement in this Circuit that "'a request for leave [to amend] must be submitted in the form of a written motion' and the motion must 'state with particularity the grounds for seeking the order [and] state the relief sought.'" *Jones v. Horne*, 634 F.3d 588, 603 n.7 (D.C. Cir. 2011) (quoting *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 21 (D.C. Cir. 2010)) (alterations in original); LCvR 15.1 (requiring that a "motion for leave to file an amended pleading shall be accompanied by an original of the proposed pleading as amended"). "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (quoting *Belizan v. Hershon*, 434 F.3d 579, 582 (D.C. Cir. 2006)) (finding "without merit" plaintiff's argument that district court erred by denying her leave to amend the complaint when that request was expressed only in opposition to motion to dismiss) (internal quotation marks omitted).

An appropriate order will accompany this Memorandum Opinion.

Date: August 8, 2016

                                                                     _____

                                                                     BERYL A. HOWELL
                                                                     Chief Judge